### M. A. GOODRICH v. MARY W. HICKS ET AL.

Decided November 24, 1898.

**Resulting Trust—Its Implication and Proof.**

A resulting trust will be implied only where it is consistent with the intention of the parties at the time of the conveyance, and the proof of the facts tending to establish it must be clear and satisfactory.

APPEAL from Anderson. Tried below before Hon. J. G. RUSSELL.

*Word & Gooch,* for appellant.

*S. A. McMeans* and *P. W. Brown,* for appellees.

WILLIAMS, ASSOCIATE JUSTICE.—This was an action by appellant to recover a lot of ground in Palestine, wherein the pleadings on either side set forth the titles relied on by the parties respectively, as they will appear below.

The case was tried by the judge, who filed conclusions of law and fact,

upon which this appeal is submitted without a statement of facts. Judgment having been rendered for defendants, plaintiff appeals. The facts found by the trial judge are these:

On the 29th day of April, 1893, E. Cossette, then the owner of the lot in controversy, conveyed it by deed to Maud Campbell. The deed was recorded May 11, 1893. The plaintiff alleged and sought to prove that the purchase money for the property was furnished by one John Hanna, and that the legal title was taken by Maud Campbell in trust for him.

On November 24, 1896, appellant recovered a judgment against Hanna for money, under which an execution was levied upon the property as that of Hanna, on the 25th day of February, 1897, and the property was regularly sold thereunder and purchased by plaintiff, his bid being credited on the execution. His deed from the sheriff is dated April 7th, and recorded April 9, 1897. With the evidence by which he sought to establish the trust in Hanna's favor, this constituted appellant's title.

Appellees' title was as follows: On February 8, 1895, Maud Campbell, then a married woman living apart from her husband, conveyed the property to Mary W. Hicks; and after having obtained a divorce from her husband, she executed a deed of ratification fully confirming the prior conveyance, which last deed was dated June 19, 1895. The first deed was recorded May 17, 1893, and the last was recorded June 19, 1895.

In consideration of the conveyance of the property in controversy by Maud Campbell to herself, Mrs. Hicks conveyed to Campbell a house and lot with the furniture in the house in San Antonio, worth $19,000, the Palestine property being taken in part payment at its value, $6000. It is conceded that Mrs. Hicks had no notice of any character of the alleged trust in favor of Hanna. Before and up to the time of the exchange the San Antonio property had been employed by Mrs. Hicks in conducting a house of prostitution; and it was the purpose of Maud Campbell, in acquiring it, known to Mrs. Hicks, to so use the property thereafter, and it was in fact so used. There is nothing found to show that Mrs. Hicks was to be in any way concerned in or benefited by such use of the property; nor was there any purpose to put the Palestine property to such use.

Concerning the existence of the alleged trust in Hanna's favor, the court says in its findings: "At the time E. Cossette made the deed to Maud Campbell, April 29, 1893, the said Hanna was insolvent and greatly indebted and was not able to hold property in his own name." * * * "As to whether the consideration money which paid for the lot in question and for the building erected upon it when it became the property of Maud Campbell by deed from Cossette was furnished by John W. Hanna or Maud Campbell, there is a great conflict in the evidence. A preponderance of the evidence is in favor of the proposition that Hanna furnished the money which paid for the property, but it is not clear nor satisfactory that such is the case."

The court concluded, as the law governing the case, (1) that before he could recover the property, plaintiff must show that he became a creditor

of Hanna before the trust in Hanna's favor resulted, as claimed by him, which he had not done; (2) that to establish a resulting trust the evidence must be clear and satisfactory, which it was not; and (3) Mrs. Hicks was in law an innocent purchaser.

Each of these conclusions is attacked by the assignments of error.

1. We do not think it is true that plaintiff would be precluded from recovering by the mere fact that his debt did not exist when Hanna's right arose. If that right had been such as plaintiff alleged it to be, and if it had still existed when the levy was made, it would have constituted the equitable title to the property, which would have been subject to execution, and which would therefore have been acquired by plaintiff through his purchase. There seems to be, in the treatment of the case, some confounding of the law of implied and express trusts with that of fraudulent conveyances. If the case made by plaintiff's allegations and proof were that Hanna had paid for the property and caused it to be conveyed to Campbell, to be held for him in order to keep it beyond the reach of creditors, then, in order to reach it, plaintiff would be required to show that his debt existed at the time of such transaction or that the latter was intended to defraud subsequent creditors. Some of the language used by the trial judge indicates that such may have been the purpose of the transaction, if Hanna in fact paid for the property. It was unnecessary for the court to define this proposition more definitely, since it did not find that Hanna furnished the consideration. The plaintiff by his pleadings made no such case as that supposed. Her right, as he alleged it, was only such as Hanna had acquired and not a superior one resulting to plaintiff as a creditor of Hanna. Proof that the transaction between Hanna and Campbell was fraudulent as to creditors would have been fatal to any claim of Hanna. For the legal title vested in Campbell by the deed, and in such a fraudulent transaction equity would not imply a trust for Hanna's benefit as resulting from his payment of the price, nor enforce an express agreement of Campbell to hold in trust for him. Eastham v. Roundtree, 56 Texas, 110; Farrell v. Duffy, 5 Wills. C. C., 435.

Without showing himself to be in a position, as a creditor, to avoid Hanna's own transaction, plaintiff could not in such case prevail. In support of the view expressed by the court below, appellees' counsel cite decisions of the Supreme Court which discuss the right of creditors to attack voluntary conveyances made by the debtor prior to the accrual of the particular debt. These have no application to cases where the property is held in trust for the debtor, for the reason that in those cases the purpose of the conveyance was to pass the whole title to the grantee, which would be inconsistent with the existence of a resulting trust. Thus, if it were conceded that Hanna's purpose in paying for the property was to invest Campbell with title to it, either through a gift or loan of the money, no trust in his behalf could be implied; for such a trust will be implied only where it is consistent with the intentions of the parties at the time of the acquisition of the property. Boehl v. Wadgymar, 54 Texas, 593. The conclusion of law of the trial judge was therefore in-

applicable, unless it was meant to find a fact which would be fatal to the existence of a trust, which construction the concluding portion of the sentence, "before the trust in Hanna's favor resulted, as claimed," would seem to repel.

2. But if the court was correct in either of the other conclusions of law, or if upon the facts found the judgment is the proper one, the case must be affirmed, notwithstanding any error there may be in the first. The court found the evidence insufficient to establish the alleged trust, and if this finding was correct there is an end of the case. But it is contended that the court applied an incorrect rule of law in determining the quantum of evidence essential to prove the fact in question. The fact stated is that a preponderance of evidence was in favor of the existence of the trust, but that it was neither clear nor satisfactory. The rule of law announced is that the evidence must be both clear and satisfactory. The last proposition has often been enunciated by our Supreme Court, by text-writers, and chancellors elsewhere. If it becomes necessary for a court to charge a jury on the subject, it may be found difficult, under our decisions, for it to do so, without incurring the risk of invading the province of the jury. But there is no such question here involved. When the court uses language commonly applied to the subject we must assume that it properly understood and applied the principle; and held that, while the evidence in favor of plaintiff might be such as would constitute a preponderance upon an ordinary issue, it was not so clear and satisfactory as to convince the mind against the presumptions arising from the deed and the policy of the law in upholding written titles. We think the decision of the court was correct. Evidence which is neither clear nor satisfactory ought not to be held sufficient to establish a fact such as that in issue. King v. Gilleland, 60 Texas, 274; Markham v. Carothers, 47 Texas, 28; Neyland v. Bendy, 69 Texas, 713; Mead v. Randolph, 8 Texas, 199; Agricultural Assn. v. Brewster, 51 Texas, 262.

3. We are of the opinion also that the court's third conclusion of law upon the facts stated was correct; but as the second conclusion is decisive of the case, we shall not protract this opinion by a discussion of the vexed subject involved.

*Affirmed.*