## BURNS v. VERITAS OIL CO. et al.
### (No. 1792.)

(Court of Civil Appeals of Texas. Amarillo. April 20, 1921. Rehearing Denied May 11, 1921.)

1. **Trusts ⬅77—Money must be paid when deed is taken.**

A resulting trust in land must result, if at all, at the time deed is taken and the legal title vests in the grantee, and no oral agreement and no payment made before or after the title is taken will create it.

2. **Trusts ⬅63¾—Resulting trust must result from transaction itself.**

A resulting trust will not exist unless the transaction is such at the moment the title passes that the trust will result from the transaction itself, and one who has paid no money or had none paid on his account, either actual or constructive, cannot claim a resulting trust.

3. **Trusts ⬅70—Resulting trust implied only where consistent with intention.**

A resulting trust will be implied only where it is consistent with the intention of the parties at the time of the acquisition of the property.

4. **Trusts ⬅63¾—When conveyance to one to hold for another creates resulting trust.**

Where the conveyance is made to one person, the mere fact that he has agreed to purchase or hold it for another, who has not paid anything or only a small part of the purchase price, does not create a resultant trust in the latter's favor, or where it does not appear that any valid consideration was given for such agreement.

5. **Trusts ⬅66—Resulting trust does not result, where there is agreement to hold property on different trust.**

Where an agreement is made at the time of the transaction to hold property on a different trust from that which would arise by implication of law, a resultant trust will not arise.

6. **Trusts ⬅63¾—Trust held not created under agreement in favor of plaintiff in oil lands taken over.**

Where ten men and plaintiff contributed property to organize a company, and the 10 other than plaintiff were to be trustees, and plaintiff was to have a 5 per cent. interest in the business, and one of the trustees purchased an option on oil lands, the 10 trustees giving a note in payment, which plaintiff was not required to sign or indorse, and several of the trustees attempted to raise money to purchase the lands, but were unable to do so, and later the trustee in whose name the option stood, along with others, organized a corporation which took over the oil lands, no trust resulted in favor of plaintiff under his agreement, none of his property or interest in any way inducing the new corporation, which paid the option note when due, to advance the money to purchase the land, even though the company was incorporated upon a conspiracy to squeeze

out plaintiff's interest; the contingency upon which his interest vested never having happened.

### 7. Corporations ⚖=30(1)—Corporation not liable for fraud of organizers.

A corporation would not be liable to plaintiff in damages occasioned by its organizers wrongfully inducing or persuading the breach of a contract by persons who had agreed to purchase lands in a venture in which plaintiff was to have an interest, even though such organizers are liable in damages for such wrong.

### 8. Corporations ⚖=397, 428(6) — Corporation charged with acts or knowledge of principal officers.

A corporation is charged with the acts or knowledge of its principal officers in transactions after its organization.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit by George A. Burns against the Veritas Oil Company and others. Judgment for defendants and plaintiff appeals. Affirmed.

Seay, Seay, Malone & Lipscomb, of Dallas, for appellant.

Lawther & Pope and A. B. Flanary, all of Dallas, and Carrigan, Montgomery, Britain & Morgan, of Wichita Falls, for appellees.

HUFF, C. J. The appellant, Geo. A. Burns, filed this suit and by his petition complains of the Veritas Oil Company, a Delaware corporation, with its principal office in Dallas, Tex., with E. D. Steger, its president, and also E. D. Steger personally, E. H. Jones, H. E. Jones, Del Walker, J. W. Russell, J. W. Bailey, W. E. Norton, W. K. McClain, C. L. Bradford, Louis J. Rossett, and the Texas Company, and the Texas Pipe Line Company, corporations, and by amendment he brought in W. D. Cline, who he alleges was joint owner with W. E. Norton in the property hereinafter mentioned as the Norton property.

The allegations of appellant state the facts upon which he relies, and, omitting the verbiage in pleading, is about as follows: Ten men were consolidating their properties to form the American Production Company. They were A. A. Green, E. D. Steger, J. W. Russell, L. D. Pruett, E. H. Jones, H. E. Jones, C. B. Van Deman, Del Walker, W. K. McClain and W. D. Ross. L. D. Pruett and C. B. Van Deman were interested in two of the properties, which were to be placed in the consolidation, the Goose Creek Petroleum Company and the Producers' Oil & Refining Company. The control, however, of the latter was in appellant, Geo. A. Burns, and in consideration of his conveying all of the properties of such company, estimated to be of the value of $150,000, to Steger, trustee, Burns was to receive 5 per cent. interest in the company to be organized. The ownership in the new company was in 10 equal parts.

The consideration to Burns to enter with his properties was that he should have 5 per cent. which was agreed to by all the parties. A. A. Green brought together 10 men, and the new company was to be capitalized under a declaration of trust in the sum of $10,000,000. The trustees and directors were to be the 10 men above named, and were to be equally interested in said properties, each to own 10 per cent. interest in the American Production Company, and each was to be issued 10 per cent. of the original stock by the trustees of the proposed company. That said parties desired appellant to put into the new company the properties controlled by him. That it was estimated that its value was equal to 10 per cent. of the gross holdings of the new company, and that appellant's interest therein was equal to 5 per cent. That it was agreed that he should receive 5 per cent. of the initial stock issued by the American Production Company, and was to own and have 5 per cent. therein, which was to be taken from the interest of Pruett and Van Deman.

A list of the properties to be placed into the consolidation by the three companies, the Goose Creek Petroleum Company, the Producers' Oil Company, and the T. O. L. Company, the latter company being controlled by Steger, shows holdings all over the state of Texas and in many counties. This list was attached to the pleadings and made a part thereof. Burns, in conformity with the agreement, did cause a transfer of the properties of the Producers' Oil & Refining Company to Steger as trustee for the American Production Company to be organized as agreed for the use and benefit of the company, which the parties were endeavoring to organize. At the time the 10 men were endeavoring to organize the holding company it was contemplated that a producing acreage should be bought so as to stabilize the value of all the properties. That it was agreed the Producers' Oil & Refining Company, so conveyed by appellant, was to be the entire consideration paid by Burns. That the original 10 men, who were promoting the new company, were to assume all liability for the purchasing price of such land, and see to the financing of its purchase. Steger purchased the Norton tract of land, which was made in pursuance to the understanding of appellant that producing acreage was to be bought in consideration of his transferring to Steger, trustee, the Producers' Oil & Refining Company, and that when Steger made the contract for the purchase of the property (the Norton tract) he made it for the use and benefit of appellant, as well as the other 10 men. He alleges that appellant, at the time the contract of purchase was made, had paid his part of the purchase price. It is stated that it was understood the American Production Company was to buy producing acreage in

the northwest extension of the Burkburnett field, so that the value of that company might be stabilized, and in pursuance to that understanding a contract was made between W. E. Norton of Wichita county and Steger, trustee, for the purchase of 27.1 acres of land in that county, describing the land. The contract for the purchase of that land was made between W. E. Norton and E. D. Steger, as trustee for the American Production Company, and $100,000 was paid in cash at the time of signing the option contract. It was stipulated in the contract that Norton was to drill five wells on said land, and that five days after the completion of the last well, Steger, trustee, was to have the right to make his election to take the property under the terms and conditions stated in the contract. In the event he took the property the consideration to be paid for the property was to amount to $2,250,000. If Steger elected to take the property, the $100,000 paid was to be applied on the total consideration. That Steger, upon election to take the property, was at that time to pay in cash $200,000 and execute two notes in the sum of $100,000 each, due, respectively, 60 and 90 days after date, with interest at the rate of 6 per cent. per annum, which notes were to be executed by the American Production Company, and were to be indorsed by the organizers of that company, to wit, Green, Steger, E. H. Jones, H. E. Jones, Del Walker, and their associates, and the remaining $1,750,000 was to be paid out of the first seven-eighths of the seven-eighths of all of the oil produced and saved from the premises until the full amount of the remaining balance was paid. The oil was to be run to the pipe lines to which the wells might be connected, free of cost to the landowner, under the terms of the original lease. A copy of the agreement was attached to the petition, as part thereof. This contract stipulated:

In the event Steger "shall fail to make his election within five days, as above mentioned, then and in that event this option contract shall cease and terminate and be of no further force and effect."

There was a provision also in the contract, if Steger should fail to elect to take the property, the $100,000 paid for the option shall remain the property of Norton. The contract also required, at the time of making the election by the trustee to pay the cash and execute the note stipulated for, "said notes shall be executed by the American Production Company (a company to be organized by the party of the second part)" meaning Steger, "as principal and said notes shall be further indorsed by" the 10 men originally named as promoters, of which appellant was not one. Appellant was not to be a trustee in the proposed company, but Steger and the others knew what his interest was to be, and agreed that his interest should be 5 per cent. in the company, and in making the contract Steger was acting for appellant and the other 10 men. That it was fully known to Norton that Steger was acting as trustee for the parties who were organizing the company. The $100,000 cash payment to Norton on the option contract was paid by the promoters of the American Production Company.

On July 3, 1919, at a meeting of the promoters, held in the city of Dallas, it was determined, for the purpose of financing the American Production Company, that E. D. Steger, C. B. Van Deman, and H. E. Jones should go to New York, Washington and other Eastern points to make necessary arrangements for financing the proposed company. A declaration of trust was drawn, naming E. D. Steger, E. H. Jones, and C. B. Van Deman as trustees, the power being reserved to increase the number. The named parties were only to act as trustees temporarily for the purpose of and pending the financing of the American Production Company. When arrangements were made for financing the company, the 10 men, who were organizing the company, were to be the trustees and directors thereof, and the organization was to be completed and all transfers of properties to be made to said company. Steger requested appellant to go with him to New York for the purpose of explaining the proposition and the properties to parties from whom they expected to receive financial assistance in financing the American Production Company. That he did go. After they arrived at New York Steger and H. E. Jones entered into a conspiracy with J. W. Bailey and Louis J. Rosser, and their codefendants in this case, to seize and appropriate to their own use and benefit the Norton property, which was found to be very valuable. Several producing wells had been brought in, and the defendants sought to seize it and squeeze out the interest of appellant therein.

In pursuance to the design defendants represented to Van Deman, if he would agree to abandon the enterprise and take out the properties of the Goose Creek Petroleum Company from the assets of the American Production Company, they could either finance the project by using the Norton tract as collateral, or, in the alternative, they could sell the Norton tract at a profit. They represented to Van Deman if he would sign such agreement the money could be raised, that it would be only temporary, and would not affect his interest, or that of his associates, or the assets of the American Production Company. If the Norton tract was sold, an accounting would be made to him and to the other parties interested in the enterprise. Van Deman, acting upon the representation, did execute the agreement. That it was represented to him that said

agreement made by himself, Steger, and Jones, as trustee, was for the purpose of using the Norton tract for the benefit of all, which was to be sold to some person or corporation, and the proceeds accounted for to the owners of the beneficial interest, or used as collateral. The agreement by Van Deman was procured from him for the sole purpose of squeezing out appellant's interest and the other parties interested in the enterprise. Defendants organized the Veritas Oil Company solely for the purpose of taking over the Norton property. That it was composed of the defendants, who knew all the facts in reference to the American Production Company, and knew the interest of appellant and the other parties. The organization of the Veritas Oil Company was a device and a scheme to squeeze out appellant and other interested parties, and of appropriating the Norton tract to the use and benefit of the defendants. That each and every party connected with the organization of the Veritas Company knew of the rights of appellant. That Steger, Jones, Bailey, and Rosser and the other defendants, acting through the Veritas Oil Company, did induce Norton to transfer the land to the Veritas Oil Company, and then arrange to take up and pay off the $100,000 note at the Security National Bank, within the stipulated time for exercising the option on the Norton tract. The said option was exercised, and the $200,000 cash was paid, and the property was conveyed to the Veritas Oil Company, and the two notes for $100,000 each were executed by the Veritas Oil Company, payable to Norton. The officers of the latter company, as far as known, are, president, E. D. Steger, secretary, E. H. Jones, treasurer, one Goodsall, of Goodsall & Co. of New York City. That the Veritas Oil Company is owned by the personal defendants named. That each and every one of them were in a conspiracy to seize the land, etc. That when they organized the company they did not act in good faith, and that when the trustees, Steger, Jones, and Van Deman, signed the agreement that the Norton tract was to be sold to any one who would take the option contract and relieve the promoters from liability on the same, it was done with the full and complete understanding with Van Deman that the arrangement was only temporary and was for the benefit of the promoters of the American Production Company. Steger and Jones, on the contrary, after securing the agreement, totally ignored Van Deman, and endeavored to take over, and did take over and appropriate, the land to their own use and benefit, and refused to recognize the interest of appellant. The Veritas Oil Company was a pure subterfuge, and the sale of the Norton tract of land to the company simply a device and a scheme and a connivance on the part of the defendants to squeeze out the interest of appellant in the land.

It was again charged that each and all the defendants had notice of the appellant's interest; that the real title to the property is in appellant and other parties who purchased the same. Appellant's interest is 5 per cent. of the seven-eighths of all oil and other minerals owned by Norton in the land, and by him conveyed to the Veritas Oil Company. Steger, Jones, and Rosser were in the corporation of the Veritas Oil Company, and after its incorporation came to Dallas, and after their return to Texas they continued to deceive, defraud, and mislead appellant. They did not tell him of the organization of the Veritas Oil Company; that Steger and Jones told Green and Pruett, with whom appellant was associated for the purpose of bringing it to appellant's hearing, that they were proceeding with the organization of the American Production Company; that everything would be all right; they would protect his interest, and that of all persons connected with the Producers' Company. Rosser did secure advice and information from Pruett about the properties, and did hold out to him that he was interested in financing the property for the use and benefit of the American Production Company. The defendants did purposely mislead and prevent any investigation on the part of appellant, and represented they had every intention of carrying out their original agreement towards the organization, etc.

By an amendment, which was not intended to supersede the original petition, but to supplement it, it is alleged that of the original 10 men who were interested in the American Production Company, in connection with other defendants herein, the following controlled the Veritas Oil Company: E. D. Steger, E. H. Jones, H. E. Jones, Del Walker, W. K. McClain, and J. W. Russell. That the above parties repudiated their agreement as to forming the American Production Company, and in conjunction with other defendants, to wit, J. W. Bailey, C. L. Bradford, and Louis J. Rosser, did cause the organization of the Veritas Oil Company, as heretofore set out. It was organized to take over the Norton land and that it was simply a scheme and device by the parties, in the hopes of shielding themselves. That the party by the name of Goodsall, of New York, is interested in the corporation, and that he had made some arrangements with the others by which he is to secure an interest for the consideration of money or something to be done by him, but it is alleged by the other organizers of the corporation, as well. Goodsall knew of the interest of appellant, and was fully advised of all the facts, and thereafter entered into the scheme. It is alleged the American Production Company, which was to be organized, was a so-called declaration

of trust, but if finally perfected it would have been nothing more than a partnership between the original 10 men and appellant. The so-called certificates of interest or stock on the trust estate were to be issued, denominating the extent of the interest of the various parties in said property. It was in no sense to have any corporate identity, and was simply an association of individuals, and their interests were to be defined by certificates.

It is alleged the Norton tract was capable of producing more than 10,000 barrels of oil per day. The defendants the Texas Company and the Texas Pipe Line Company were furnished pipe line facilities for the oil. Appellant is entitled to one-third of 10 per cent. of all oil produced and sold off the premises until June 25, 1919, and that, after paying to Norton his part of the oil going towards the purchase price, appellant is entitled to 5 per cent. of all oil produced and sold from the premises and he prays for an accounting. That the lands set out in the list attached to the petition as an exhibit were to go into the American Production Company, and to consist of the holdings of said company, for the purpose of exploiting same for oil and other minerals under the terms and conditions of the original leases. That the reasonable market value of the lands so listed is $1,000,000. That the reasonable cash market value of the Norton tract is $5,000,000. That on account of the repudiation by Steger and his codefendants of their agreement to organize the company and to take over said properties appellant has been defrauded out of his interest in the land, and that the reasonable cash market value of his interest therein would have been the sum of $300,000. He prays that he be given judgment for 5 per cent. undivided interest in and to the Norton tract of land; that he have his writs of possession, or, in the alternative, that he have judgment against defendants for its market value, $250,000, and that he have his title to his land quieted; that he have an accounting for his part of the oil produced and saved since June 25, 1919, and judgment for the value of same; that he have his judgment for $50,000, the value of his interest in the other land other than the Norton property, which was to be transferred to the American Production Company, for costs and such other and further relief as he may be entitled to in law and in equity.

The trial court disposed of this case upon general and special exceptions, presented by the several groups of defendants, sustaining each of the general exceptions and the several special exceptions, and, the appellant refusing further to amend, the trial court entered judgment against him in favor of the several defendants, from which judgment this appeal is prosecuted.

The first assignment, together with several others, insists that there was error on the part of the trial court in sustaining the general exceptions of the several defendants to the petition, and the amendment filed therewith. The appellant, in his assignment, recites the allegations upon which he relies as establishing his rights, and presents under the assignment several propositions, to the effect that there was an express or direct trust and a resultant trust shown by the petition in the Norton tract of land, and that Norton and Kline were proper and necessary parties, etc.

[1-6] It perhaps will not aid the solution of the question by attempting to classify the facts set up as either an express resultant or constructive trust, or that the several divisions be kept clearly in view. It shall be our effort to determine if the facts alleged come within the definition of any of these, or if the elements of all be blended, and, if so, do the acts authorize the establishment of the trust upon the legal title held by the Veritas Oil Company to the Norton tract of land? We think there are some of the elements of a direct or express trust, in that the obligations show an agreement of 10 men, with whom appellant at some time became associated to acquire the Norton tract of land for their joint benefit, and to be held under a direct declaration of trust, in the name of the American Production Company. As a preliminary step, an option contract was obtained from the owner of the land. Appellant and his associates constituted Steger trustee, and for them to make such contract; he made the contract, or rather paid for an option. This contract itself did not vest in appellant or the original 10 promoters an interest in the land. They had the right to buy it, but this right was contingent. Until they had complied with the things to be done, they or their trustee could acquire no interest in the land. They were required to pay $200,000 in cash and the proposed declaration of trust creating the American Production Company, or, in other words, from their partnership. This partnership was to make its notes for $200,000, and these notes were to be indorsed by the ten original promoters who were to be the trustees or directors of the proposed company. Appellant was not one of these, and the partnership so organized was by the contract to agree to pay to the owner of the land out of the oil produced from it $1,700,000. The allegations show the conditions had not happened which were necessary to vest the proposed beneficiaries with an interest in the land when the owner conveyed the land to the Veritas Oil Company.

However, the relationship established by agreement between appellant and the 10 promoters and with Steger and with each other was fiduciary, which required good faith in

their dealings with each other, for the proposed enterprise, and in securing the title to the land under the option contract. As we conceive the purpose of the allegation, it is the effort of appellant to show a resultant trust by showing that the Veritas Oil Company purchased the land, but that the money or consideration was paid by appellant and his associates, through their trustee, Steger, and others and that they stood in a fiduciary relation and used fiduciary funds or assets to purchase either in the name of Steger and his then associates or a third person, the Veritas Oil Company, created by Steger and said parties for that purpose. The trust must result, if at all, at the time the deed is taken, and the legal title vests in the grantee. No oral agreement and no payment made before or after the title is taken will create a resultant trust and such trust will not exist unless the transaction is such at the moment the title passes that the trust will result from the transaction itself. If appellant paid no money, or none was paid on his account, either actual or constructive, he cannot claim a resulting trust. A resulting trust will be implied only where it is consistent with the intention of the parties at the time of. the acquisition of the property. It is essential that the party setting up the trust shall have paid or become bound for the purchase money on his own account and as a part of the original transaction. 1 Perry on Trusts, paragraphs 133, 134; Arnold v. Ellis, 20 Tex. Civ. App. 262, 48 S. W. 883; Goodrich v. Hicks, 19 Tex. Civ. App. 528, 48 S. W. 798; Wade v. Cohen, 173 S. W. 1168; Allen v. Allen, 101 Tex. 362, 107 S. W. 529. We do not cite the above cases as being the same in their facts or as upon analogous facts, but as recognizing the general principles. There is no trust—

"where the transaction itself is not such that a trust. results immediately upon the passing of the legal title as when the person seeking to establish a trust in his favor under such agreement has not paid any of the consideration, although the agreement may be considered in establishing the ownership of the purchase money and how it was invested. Thus, where the conveyance is made to one person, the mere fact that he has agreed to purchase or hold it for another who has not paid anything, or only a very small part of the purchase money, does not create a resultant trust in the latter's favor, * * * or where it does not appear that any valid consideration was given for such agreement, * * * where an agreement is made at the time of the transaction to hold the property on a different trust from that which would arise by implication of law a resultant trust will not arise." 29 Cyc. 107, 108.

"The mere fact that two parties verbally agree to such a purchase for their joint benefit, and one of them takes title in himself alone, does not raise a resultant trust in the other's favor, if none of his means had been used in making the purchase, and he has no contract right in the property and the one taking the title has no fiduciary relation to him, unless such other changes his position or takes some action that he would not have taken except in reliance on the agreement, or unless the grantee enters into and carries out the agreement mala fide for the purpose of gaining an advantage to himself." 29 Cyc. 114.

The facts as alleged as above suggested do not show that Steger, as trustee for appellant and his associates, who were endeavoring to organize a partnership, had title to the land. They had an option, which of course would give them a valuable right, but that right was contingent upon the happening of the thing stipulated in the contract. These conditions had not been complied with, and upon failure their rights were at an end. It is alleged in effect appellant and his associates did not have the money to finance the proposition, and they went to New York to obtain it. That they did not obtain the money for their proposition and scheme appears from the allegation, and their rights were at once at an end. The appellant in fact had not paid any part of the $100,000 on the option, and was not to pay anything on it, or to be one of the indorsers on the notes, which were to be executed. There is no allegation that Steger or the trustees who were to pay the money did or could do so, or that any sum was paid by the Veritas Oil Company on the faith of the proposed organization, the American Production Company. All the appellant had in the proposition was his interest in the Producers' Oil & Refining Company, which he alleges he conveyed to Steger in trust for the organization to be promoted. It is not pretended that this property, or appellant's interest in it, in any way induced the Veritas Oil Company to advance the money to purchase the land, or that it was to secure Norton in the deferred payments on the land. The whole scheme of appellant and his associates toppled when the financial aid sought was not secured by the 10 men who were to bear the burden of financing it. It is shown the Veritas Oil Company paid off the note to a Dallas bank for $100,000. It is evidently the intendment of the allegation to show that this note was executed to obtain the $100,000 to pay for the option. No part of this sum was going to appellant, and he was in no way liable for it. If Norton was willing to accept the amount paid as an option, and as a payment from the Veritas Oil Company, on their purchase, and the Veritas Oil Company was willing to relieve the 10 men from the loss by reason of the forfeit of this sum, it is not a matter which affects appellant, or which would be a consideration in his favor. If the 10 men were to finance the proposition and assume the burden, and they did not do so, then there should be a showing they could have done so, and that Norton and the parties acquiring the land

knew of that fact, and induced them to fail in that undertaking. But instead of that, appellant alleges an agreement to take the property on a different agreement, entered into at the time of transferring the title, and upon entirely a different trust and proposition, and by different parties. We think the appellant fails to show that the consideration for the land, or any part of it, was paid by him, or that it was furnished upon his account or upon any property or interest owned by him and that no resulting trust is shown. .

We are likewise of the opinion that no constructive trust is shown. Steger, Jones, or Norton are not shown to have breached their trust relations. The option was taken upon the faith of financing the proposition, with which appellant was not connected. The 10 men did not finance it, and it is not alleged they· could obtain the money or could have financed the proposition. It is clear from the allegations that the men who had the money would not finance the proposition as made by appellant and his associates. It is quite manifest that Bailey, Bradford, Rosser, and Goodsall are the men who financed or furnished the money to buy the land. That to do this they organized the Veritas Oil Company. If the money could not be obtained on the original proposition, in which appellant was interested, and that scheme fell through, it was no breach of the trust for Steger and others to take stock in the Veritas Oil Company. The Veritas Oil Company and the four men named did not occupy a fiduciary relation to appellant, and their desire to obtain the land as alleged and to appropriate it was no fraud upon appellant. They were under no obligations to buy it for him. If he and his associates did not furnish the money or could not, the promoters of the Veritas Oil Company were not required to buy it· for appellant, or to refrain from buying it. Norton, having the title, had the right to sell it to whom he pleased, on any terms he pleased, or upon the same terms he had offered to appellant and his associates. It is alleged that the Veritas Oil Company was incorporated upon a conspiracy to squeeze out appellant's interest. He must first show he had an interest to be squeezed out. The contingency upon which his interest vested never happened.

It is, in effect, alleged that it was represented that the new group of men would proceed to organize the American Production Company, and the purchase by the Veritas Oil Company would not affect its organization. The Norton property was not one of the properties to be merged in the American Production Company, but was to be purchased in addition thereto, or that some other producing property was to be so purchased. The merger could have been consummated upon the original plan without the Norton land, as it was no part of the merger. We see no allegations showing that the Van Deman prop-

erties, the Goose Creek Petroleum Company, entered into the Veritas Oil Company. Just how· the taking´ of that property out of the original proposition temporarily would enable the parties to finance the American Production Company or enable them to sell the Norton property, or use it as collateral, we do not perceive. It may be, as will appear from the allegations, that Bailey and others would not buy the Norton property, with the option undisposed of, unless Steger and the others would sign an agreement that Norton could convey the land to the other people. It is not alleged, as we gather, that these other parties would finance the American Production Company, or had agreed to do so, or represented that they would, and that the money was really furnished, or pretended to have been furnished, upon any such consideration or representation. The facts alleged as fraud do not show such fraud as would establish an interest in favor of appellant in the land. At most, they only case a suspicion of fraud.

[7] It seems to us the only cause of action appellant shows, if any, is an action against the 10 men who agreed to pay for the Norton tract, and did not on breach of contract, and consequent damages. If Bailey and others wrongfully induced or persuaded these 10 men to breach their contract, then they might be liable upon such wrong, but in such case the Veritas Oil Company, as a corporation, would not be liable for such damages. Raymond v. Yarrington, 96 Tex. 443, 72 S. W. 580, 73 S. W. 800, 62 L. R. A. 962, 97 Am. St. Rep. 914. The suit of appellant is to fasten a trust on the land and recover its possession, but if he could not so recover, then that he recover its value and the products produced therefrom from the date of the option contract.

[8] We think, if a general exception would not reach the matters discussed, that the several special exceptions do so. Those exceptions were presented by the Veritas Oil Company and the other defendants in their respective answers, and if such special exceptions were well taken there was no error in dismissing the petition and rendering judgment for the appellees, upon appellant's election to stand upon his petition. However, we are not prepared to agree with appellee's apparent contention that the Veritas Oil Company would not take the land charged with the trust if one had been shown, if it did so charged with notice thereof. It would seem that upon the adoption of the contract or the acceptance of the deed by the corporation it would do so, subject to the acts and conduct of the promoters. Apparently it is alleged, however, that the Veritas Oil Company was organized to take over the land, and that the transaction was consummated with it. It would, of course, in such event, be charged with the acts or knowledge of its principal officers in the transaction after its organization when the deed was executed to it. Fletch-

er, Cyc. Corporations, vol. 1, §§ 150, 152; Cator v. Commonwealth, etc. (Com. App.) 216 S. W. 140.

We are of the opinion that the judgment should be affirmed.

### On Remand.

The appellees present a motion to correct our statement as to the disposition of the case in the trial court, and call to our attention an inaccuracy which we think proper in justice to appellee J. W. Bailey to correct. It seems he answered the petition of appellant by general exceptions and other answers, but requested before presenting them to be permitted to withdraw the exceptions and to try the charges against him on the facts, and not upon a question of law. This request was granted, but the other appellees, defendants below, insisted upon their exceptions, and the trial court sustained the same, and upon appellant declining to amend, judgment was rendered for the defendants excepting, and in order that the judgment should be final from which an appeal could be prosecuted, the suit against J. W. Bailey was dismissed. This, as we conceive the matter, will not affect the holding made by us in the original opinion.

The motion presented by appellant for rehearing will be overruled.