**WACASEY v. WACASEY et al. (No. 2800.)**

(Court of Civil Appeals of Texas. Texarkana. Nov. 1, 1923. Rehearing Denied Nov. 22, 1923.)

**1. Trusts ⟨key⟩76—Resulting trust created by realty purchase with others' funds, purchaser taking title.**

If defendant collected funds belonging to plaintiffs, and purchased land with it for plaintiffs, but took the conveyance in his own name, equity will deem the land to be held as a resulting trust for plaintiffs' benefit.

**2. Trusts ⟨key⟩89(2)—Evidence held too indefinite to establish resulting trust.**

Evidence as to the time when plaintiffs' money was applied to the payment of realty, the title to which was taken in defendant's name, *held* too indefinite to establish a resulting trust.

**3. Trusts ⟨key⟩77—Consideration must be paid at time title is acquired to create resulting trust.**

To create a resulting trust the consideration must be paid and the trust arise at the very time the title is acquired.

**4. Trusts ⟨key⟩89(5)—Proof must be clear and convincing to establish resulting trust by parol evidence.**

To establish a resulting trust by parol evidence as against holder of the legal title to

the property, the proof of all essential facts and circumstances must ordinarily be clear, convincing, and satisfactory.

Error from District Court, Fannin County; Ben H. Denton, Judge.

Action by Bess Wacasey and others against J. W. Wacasey. Judgment for plaintiffs, and defendant brings error. Reversed, and cause remanded.

A deed was executed on July 26, 1919, by J. T. Peak and his wife to J. W. Wacasey, conveying in fee-simple title 58.85 acres of land in Fannin county, in consideration of $9,710.25 cash. Bess Wacasey brings the suit for herself and as next friend of her minor son, A. V. Wacasey, against J. W. Wacasey and Mary Wacasey, to recover an interest in and for partition of the 58.85 acres, upon the ground that the purchase of the tract of land was with funds to the extent of the sum of $2,197.30 arising from the sale by J. W. Wacasey of community property belonging to Bess Wacasey and her deceased husband, and that it was intended to be purchased for the benefit of herself and her minor son and a resulting trust was thereby created in their favor for that portion of the land the $2,197.30 bears to the entire price paid. Mrs. Bess Wacasey is the surviving wife of Albert V. Wacasey, deceased, and the minor, A. V. Wacasey, is their only child. Albert V. Wacasey died intestate on December 2, 1918, and was the son of J. W. and Mary Wacasey.

J. W. Wacasey demurred to the petition, and filed a general denial and pleaded the statute of frauds. Mary Wacasey demurred to the petition, filed a general denial, and specially pleaded a want of any consideration for a specially set out agreement, and the statute of frauds. The case was submitted to a jury on special issues, and in keeping with the verdict the court entered judgment as follows: (1) Awarding Bess Wacasey and her minor son together an undivided interest of 24¾ per cent. of the land, and (2) awarding J. W. Wacasey an undivided interest of 75¼ per cent. of the land, and (3) directing partition of the land according to the respective interests of the parties. A judgment was entered in favor of Mary Wacasey.

Mrs. Bess Wacasey testified that in 1917, under an agreement between J. W. Wacasey and herself and her husband, J. W. Wacasey purchased land for them, taking the deed in his own name, to the amount of 80 acres, in Red River county; that about January 1, 1918, she and her husband moved to the 80 acres of land and made valuable improvements thereon, and they made a crop on it in 1918; that her husband died of influenza December 2, 1918. She further said (quoting from her testimony):

"After my husband's death Mr. Wacasey, his father, took charge of the property. We had on hand four bales of cotton, corn, oats, hay and cottonseed, three head of stock, a buggy, wagon, and the farming tools. My husband's father took charge of all of it and disposed of it. He sold the farm, too. After he sold the farm, and all the other things, he told me that there was remaining due me $1,800 on the farm and $379.30 on the personal property. He wanted to borrow the money for one year, and he borrowed it for one year. At the end of that year [meaning 1919] he paid me the interest on it. So after he paid me the interest for that year [1919] they [J. W. and Mary Wacasey] sold their home in Clarksville [about January 1, 1920], and after he sold this land they came down to me and asked me how it would suit me to invest my money in land. I told him it would suit me all right; I would rather have it in land than anything else. We had agreed that I live with them and me work here in Bonham. So they came down to Greenville to take me to look for a place for all of us to live. We found this place over here and we bought. The money he had of mine was invested in this place out here, the 58.85 acres in question, the two sums making $2,197.30. I did not live with them on this 58.85 acres. * * * He did not put the money that he borrowed from me in the 234 acres. I loaned the money to him in January [1919], and he did not move to Bonham until the following December [1919]. He bought that 58.85 acres. I know I loaned him $1,800 at one time, and I know he told me he was going to invest it in this property [the 58.85 acres], and had invested it, and that is all I know about it."

J. W. Wacasey testified he had a verbal agreement with his son Albert V. Wacasey and another son that if they would move on certain land in Red River county and improve it and pay the outstanding liens and interest against it he would give them all the profits made in case he sold the land; that he did thereafter sell the land and made a profit on it, of which he gave to his son Lewis $1,000, and to the minor son of his other son, then deceased, $1,800. He testified (quoting from the evidence):

"I sold the land that me and my wife, Mary Wacasey, owned in Hunt county and put in land I bought in Red River county. I bought 300 and odd acres—157 acres in one tract, and 180 acres in another tract adjoining. I had two sons married at that time. Bess Wacasey's husband was named Alfred. I had a verbal agreement with him. I let him and his brother have one of the tracts (157 acres) to work, with the understanding that when I sold that tract I would give them the increase or profit made in the sale, that is, whatever the land advanced in price when I sold it that I would give the advanced price to them. Before the year was out Alfred died. So when Alfred died we sold the tract of land that they were on. * .* * The money that we considered was to be divided between the children was $1,800 to Bess, and to Alfred's brother Lewis $1,000 and some dollars. * * * I sold the place and sold part of Alfred's crops. He died before he sold all of it [crops], and I sold part of it after he died. I told Bess that I would give his child the $1,800, and would pay her

interest on that so that she might have a little income to help raise the child, and I would give her a home. I never did have any agreement to give him (Alfred) that land. I was going to give him the increase after the indebtedness against it was paid. That was just a gift on my part. When I sold out and got the money I told her (Bess) then that I would set that sum apart and give her 8 per cent. interest on the $1,800. Well, after we moved up here, she insisted on my investing that money in something that she could move into; she wanted a house to herself. I told her that she was too poorly (in health) to undertake to try and live by herself. * * * The $1,800 that I gave her out of the land I invested in the 234 acres. I used it that fall to make my payment due on it. That land is still on hand unsold. * * * I bought 58.85 acres. I never did invest any of her money in the land. * * * Bess did not have a talk with me in regard to the purchase of the tract of land, nor ask me to invest her money in that land. I paid the money out on the 234 acres in the year (1919) before I moved down here (1920). I stayed there a year after I got Bess' money. * * * There is due $1,800 of the land sale and $397.30 that was left from the stuff (sale of crops and farm products)."

The jury made the finding of facts, in substance: (1) That J. W. Wacasey used the $2,197.30 as part of the payment of the purchase price of the 58.85 acres of land, with the consent or agreement on the part of Bess Wacasey to do so; and (2) that J. W. Wacasey did not "invest the $2,197.30 in the 234 acres in Red River county."

H. G. Evans, of Bonham, for plaintiff in error.

Harry L. Carpenter, of Greenville, and Thos. P. Steger, of Bonham, for defendants in error.

LEVY, J. (after stating the facts as above). [1] The plaintiff in error first predicates error upon the overruling of a general demurrer to the petition of the defendant in error, upon the ground that the petition does not allege facts showing a resulting trust or creating an express trust. The allegations, in effect, are that J. W. Wacasey collected and held in his possession the sum of $2,197.30, which was the balance of the community funds owing to the estate of Bess Wacasey and her deceased husband, Alfred V. Wacasey, and belonging to Bess Wacasey and her minor son, and that he "invested said balance for these plaintiffs in 58.85 acres and procured the deed in the name of J. W. Wacasey." If it be true, as alleged, that J. W. Wacasey collected $2,197.30 of the funds belonging to the plaintiffs, and purchased 58.85 acres of land with it "for these plaintiffs," and took the conveyance in his own name, equity would in such a case deem the land to be held as a resulting trust for the plaintiffs beneficially entitled thereto. Long's Adm'rs v. Steiger, 8 Tex. 460; Burns v. Ross, 71 Tex. 516, 9 S. W. 468; 3 Story,

Equity Jurisprudence (14th Ed.) § 1597; 39 Cyc. p. 150; 26 R. C. L. § 73, p. 1227. We think it was not error to overrule the demurrer.

[2-4] The plaintiff in error next assails the sufficiency of the evidence to engraft a trust upon the tract of land in favor of Bess Wacasey and her minor son. The proposition is that the evidence is too vague, uncertain, and indefinite, and does not legally discharge the burden of proof upon the defendant in error to establish a resulting trust as alleged. The petition does not allege an express trust, which must exist, if at all, either by express agreement or by the direct and positive acts of the parties by some writing or deed. It is the settled rule that to create a resulting trust the consideration must be paid and the trust arise at the very time the title is acquired. Parker v. Coop, 60 Tex. 114; Gardner v. Randell, 70 Tex. 453, 7 S. W. 781; O'Connor v. Vineyard, 91 Tex. 496, 44 S. W. 485. And in order to establish a resulting trust by parol evidence, as against the holder of the legal title to property, the proof of all the essential facts and circumstances must, as a general rule, be clear, convincing, and satisfactory. Goodrich v. Hicks, 19 Tex. Civ. App. 528, 48 S. W. 798; 39 Cyc. p. 166. In view of these settled rules, and after having carefully looked through the whole of the evidence, we have come to the conclusion that the proposition of the plaintiff in error should be sustained. It is the contention of Bess Wacasey, as shown by her testimony, that after the death of her husband in December, 1918, J. W. Wacasey sold all the property, real and personal, and realized therefrom, after paying incumbrances, $2,197.30, and that he "wanted to borrow the money for one year, and he borrowed it for one year." The loan was made in January, 1919, for one year. She admits that "at the end of that year he paid me the interest on it for one year." Further, she definitely fixes the time when J. W. Wacasey offered "to invest my money in land" at the time "after he paid me the interest for that year" and "after they sold their place, their home in Clarksville." The home in Clarksville was not sold until the latter part of 1919 or early part of 1920. But the undenied fact appears that the 58.85 acres upon which it is sought to engraft a trust was purchased and paid for on July 26, 1919. So if Bess Wacasey by express contract loaned the $2,197.30 to J. W. Wacasey for one year, and he kept alive the debt by paying the agreed interest at the end of the contract year, and Bess Wacasey received the interest at the end of the contract year, there is clearly the intention not to extinguish or terminate the contract of loan before the end of the year. If the contract of loan continued until the end of the year, then J. W. Wacasey made no "investment"

of the $2,197.30 "for these plaintiffs" in the purchase of the land in July, 1919, about six months before the loan contract expired. Any subsequent payment after July, 1919, made by J. W. Wacasey will not raise a resulting trust. The trust must result, if at all, at the time the deed is taken and the legal title vested. The evidence is not sufficiently certain and is too indefinite to establish a resulting trust, and the judgment is reversed and the cause remanded.