## TRINITY FIRE INS. CO. v. SOLETHER et al.

### No. 8761.

Court of Civil Appeals of Texas. San Antonio.

March 2, 1932.

Rehearing Granted and Judgment Reversed and Rendered April 6 and May 11, 1932.

Hill & Greer, of Mission, John J. Cox, of San Antonio, and Goggans & Allison, of Dallas, for plaintiff in error.

S. N. McWhorter, of Weslaco, for defendants in error.

COBBS, J.

This suit was brought by Nellie Wood Solether, joined by her husband, against the Trinity Fire Insurance Company, to remove the cloud from the title to real estate conveyed by Clell Solether to his wife, existing on account of the abstracting and recording of a certain judgment recovered by the Insurance Company against Clell Solether. Plaintiff alleged that the property was the separate estate of Nellie Wood Solether.

The Trinity Fire Insurance Company denied that the property was the separate estate of Nellie Wood Solether and filed a trial amendment in which it alleged that the property in question was the community property of Clell Solether and his wife, and asked for a foreclosure of its judgment lien against the property.

The case was tried by the court, without a jury, and judgment rendered declaring said property to be the separate estate of Nellie Wood Solether and removing the cloud from the title.

Plaintiff in error contends that the title to the property was in the name of Clell Solether at the time the abstract of judgment was recorded, and that:

"The undisputed evidence showed that John M. Bennett by a deed which was dated

May 18th, 1926, but not acknowledged until July 21st, 1926, conveyed to Clell Solether 10.79 acres of land in Hidalgo County, Texas, for a consideration of $8,632.00 of which $4,316.00 was recited to have been paid in cash and $4,316.00 in vendor's lien notes which were signed by said Clell Solether. Mrs. Solether did not sign the notes, and her name was not included in the deed. This land was subdivided by Clell Solether, without the joinder of his wife, into 63 lots known as the Mistletoe Park Addition to the City of Weslaco, Texas. Clell Solether, alone, made the dedication on the plat.

"At the time all this occurred, Mrs. Solether was not in the State of Texas but was in Ohio. Mrs. Solether did not sign the vendor's lien notes given to John M. Bennett as part of the purchase price. Clell Solether paid the $4,316.00 cash to John M. Bennett. He said that he paid this money out of Mrs. Solether's funds which had been given her by her uncle."

After the subdivision of the property, Clell Solether and his associates started to sell off lots, but Bennett, who held a vendor's lien upon the property, refused to execute releases on the lots sold. Solether then borrowed $4,000 from Porter Doss, giving his unsecured note therefor, and paid Bennett's vendor's lien note and secured a release from him. As Mrs. Solether had not returned from her trip North, she knew nothing about the loan from Doss and did not sign the note.

In 1927 Solether signed a note to Jarratt Mortgage Company, which was reduced to judgment by its assignee, the Trinity Fire Insurance Company, and judgment duly abstracted on November 14, 1929. On December 7, 1929, Clell Solether conveyed the unsold lots to his wife, stating therein that the property was the separate property of his wife.

Since the record title was in the name of her husband, the burden of proof was on Nellie Wood Solether to establish a resulting trust, which is not subject to the registration laws, and will be decreed by a court of equity only if the facts warrant it. It must arise at the very time that the title is taken. Parker v. Coop, 60 Tex. 111; Addison v. Ball (Tex. Civ. App.) 262 S. W. 877, 881; Burns v. Veritas Oil Co. (Tex. Civ. App.) 230 S. W. 440, 445; Pomeroy, Eq. vol. 3 (3d Ed.) pp. 1991, 1992; Perry, Trust & Trustees (7th Ed.) vol. 1, §§ 126 and 133.

The consideration paid for this property was $8,632, of which amount $4,316 was paid in cash, and $4,316 was paid by vendor's lien notes executed by Clell Solether (and not by his wife). It is nowhere alleged nor attempted to be proven that there was any kind of understanding with Bennett or any one else that Mrs. Solether's separate estate was pledged for the property, but this does not affect the question if it can be shown that the property was purchased for her and to be paid for out of her separate estate.

The property was shown to be the separate property of Mrs. Solether, when it was purchased and at the time of the abstracting of the judgment, and at all times thereafter, the title being held by Clell Solether for her benefit; and because of such fact the judgment lien did not attach thereto. The signing of the vendor's lien note, evidencing a balance of the purchase price of the property, by Clell Solether, under the circumstances of this case, did not make the said property community property.

Mrs. Solether was to receive $7,000 from her uncle, which she wanted to invest. Her husband bought this property for her, one-half of the purchase price being paid out of the money given to her by her uncle, and the balance represented by a vendor's lien note signed by her husband. It was the understanding that this property was to be her separate estate to be paid for by her out of her own money, and it was always regarded by her as her separate property. The title was placed in her husband's name because he was to subdivide and sell the property for her, while she was away in the North. When the subdivision of this property got under way, it became necessary to have the vendor's lien released, so Clell Solether borrowed on his open note $4,000 of one Doss with which to discharge said lien. This money borrowed of Doss was repaid out of profits received by Mrs. Solether on sales of her subdivided property, and out of moneys received from her uncle, Mr. Fleck. Mrs. Solether, in this manner, paid the entire purchase price of said property out of her own money. Mr. Clell Solether testified: "The money that I paid for that property was my wife's money. * * * It was my wife's money that went into the payment of this property."

There seems to be no dispute over the proposition that the wife may own separate property, title to which is held in her husband's name, which is free from the lien of a judgment against the husband. However, on this proposition we cite the following authorities: Blankenship v. Douglas, 26 Tex. 225, 82 Am. Dec. 608; Parker v. Cook, 60 Tex. 111, 674; Sparks v. Taylor, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381; Amend v. Jahns (Tex. Civ. App.) 184 S. W. 729; Penman v. Blount (Tex. Civ. App.) 264 S. W. 169.

In the Sparks Case, supra, the court said: "The fact of agreement that the notes should be paid by the separate funds of the wife fixed upon the land purchased the character of separate property, the controlling facts being the intention of the parties and the investment of the wife's separate funds."

In the case of L. W. Levy & Co. v. Mitchell, 52 Tex. Civ. App. 189, 114 S. W. 172, 174, the court said: "We think the controlling question in this case is the effect to be given to the previous understanding between Mrs. Mitchell and her husband as to the purchase of these lots with her separate means. * * * The agreement in this case between the husband and wife to purchase the land for the benefit of her separate estate, and the fact that the same was so purchased and paid for with her separate funds, we think, constitutes the lots in question her separate property, irrespective of the fact that the money was not paid at the time of the purchase, but subsequently."

The following cases, cited by defendants in error, are to the same effect: Schuster et ux. v. Bauman Jewelry Co., 79 Tex. 179, 15 S. W. 259, 23 Am. St. Rep. 327; McClintic v. Midland Grocery & Dry Goods Co., 106 Tex. 32, 154 S. W. 1157; McBride v. Witwer, 60 Tex. Civ. App. 223, 127 S. W. 902; Amend v. Jahns (Tex. Civ. App.) 184 S. W. 729; Aultman, Miller & Co. v. George, 12 Tex. Civ. App. 457, 34 S. W. 652; Sinsheimer v. Kahn, 6 Tex. Civ. App. 143, 24 S. W. 533; Sparks v. Taylor, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381.

The court, after hearing all the evidence, found that the property was the separate estate of Mrs. Solether, and, as such finding was based upon the evidence, it will not be disturbed.

The judgment is affirmed.

### On Motion for Rehearing.

SMITH, J.

The judgment was affirmed upon the holding that the whole of the property involved belonged to the separate estate of Mrs. Solether, because of a resulting trust in her favor therefor. We have concluded upon rehearing that we erred in that holding.

■ To support a claim of a resulting trust such as that asserted here, it must appear that the consideration was paid (or assumed) by the claimant, and the trust created, at the very time and by reason of the very facts of the transaction itself. Lacey v. Clements, 36 Tex. 661; Parker v. Coop, 60 Tex. 111; Gardner v. Randell, 70 Tex. 456, 7 S. W. 781. In Parker v. Coop, supra, this rule, as stated in Perry on Trusts, is approved: "The trust must result, if at all, at the instant the deed is taken, and the legal title vests in the grantee. No oral agreements, and no payments, before or after the title is taken, will create a resulting trust, unless the transaction is such at the moment the title passes that a trust will result from the transaction itself."

Undoubtedly a resulting trust was created in favor of the wife as to an undivided one-half interest in the property, because, at the time it was acquired, one-half of the consideration therefor was paid in cash out of her separate funds.

■ But the remaining one-half of the consideration was not assumed by her, nor did she become bound therefor on her own account, at the time of the transaction, whereas the law is that a party not so obligated or bound cannot afterwards set up a resulting trust such as that asserted by defendant in error. Burns v. Veritas Oil Co. (Tex. Civ. App.) 230 S. W. 440.

The deferred obligation, as evidenced by the husband's note, became a community debt, which was afterwards paid with community funds; that is, with money borrowed by the husband from a third party. Goddard v. Reagan, 8 Tex. Civ. App. 272, 28 S. W. 352.

■ These facts irrevocably fixed in the community the title to one-half the property thus acquired, at least as to third parties, who could not, without notice, be bound by secret intentions or understandings of husband and wife concerning that title.

■ We hold, under the facts of the case, and upon the authorities cited, that an undivided one-half of the property involved belongs to the separate estate of Nellie Wood Solether, but the other half is a part of the community estate of Nellie Wood Solether and her husband, and was therefore subject to the lien asserted by plaintiff in error. It was said in Goodard v. Reagan, supra, a case precisely in point in principle, that: "It also appeared that of $1,000, which was the consideration paid for the 200-acre tract, $700 was the money of the wife. The other $300 was borrowed from one Roach, for which the joint note of Reagan and wife was given, and the money so obtained was paid for the land. Some four or five weeks after the land had been thus paid for and acquired, the note given to Roach was paid out of funds of the wife, which had been received from Tennessee. It is claimed that from these facts it appears that the whole of the consideration for the 200 acres was paid with the wife's separate means. But this contention is contrary to the decisions of the supreme court. The money borrowed from Roach was community funds; the note given to him was a community debt, and when paid out of the wife's money became, perhaps, a claim in her favor against the common estate, or against her husband. The title to the land had, however, been acquired, and its status was fixed at the time of its acquisition. As $300 of the price paid for it was common funds, and $700 the separate funds of the wife, the equitable title in a three-tenths interest vested in the community estate, and seven-tenths in the wife. Heidenheimer v. McKeen, 63 Tex. 229; Parker v. Coop, 60 Tex. 117. The court below held the whole of the 200 acres to have been the sepa-

rate property of the wife, and for this the judgment must be reversed."

Plaintiff in error's motion for rehearing must be granted, the judgment of affirmance set aside, and the judgment of the trial court reversed, and the cause remanded.

### On Plaintiff in Error's Second Motion for Rehearing.

SMITH, J.

The case having been fully developed and the facts made clear upon the whole case, plaintiff in error's motion for rehearing will be granted, the judgment will be reversed and judgment here rendered decreeing to plaintiff the foreclosure of its asserted lien upon an undivided one-half interest in and to the property involved, together with all writs incident to that relief, with costs of appeal.