### SHROPSHIRE et al. v. HAMMOND et al.
### No. 13783.

Court of Civil Appeals of Texas. Fort Worth.

June 24, 1938.

Rehearing Denied Oct. 14, 1938.

Geo. W. Polk, of Fort Worth, for appellants.

Bullington, Humphrey & King, of Wichita Falls, and Julian E. Simon and Mack & Mack, all of Fort Worth, for appellees.

DUNKLIN, Chief Justice.

C. E. Shropshire and J. G. Fowler instituted two separate suits, which were consolidated and tried as one, upon their joint pleadings, and for convenience they will be designated as plaintiffs.

Each of the plaintiffs sought a recovery of an undivided interest in and to an oil lease on the east 140 acres of a tract of 240¾ acres out of the Wm. Orr Survey, Abstract 849, in Jack County, Texas; and also for the value of the same proportions of oil taken from the lands by the defendants.

Following are the parties made defendants in the suit: J. G. Hammond, the Hammond Oil Company, a corporation, the Sinclair Prairie Oil & Marketing Company, a corporation, and W. B. Hamilton. However, plaintiffs dismissed their suit against W. B. Hamilton.

Plaintiffs have prosecuted this appeal from a judgment denying them a recovery of any interest in the east 100 acres of the tract above described, but with the further recital in the judgment that the same "shall not affect any interest owned by the plaintiffs as to the west forty acres described in the above lease."

The undisputed facts, out of which this controversy arose, were as follows: On March 16th, 1936, J. S. Rhodes, for himself and as community administrator of the estate of himself and deceased wife, Julia E. Rhodes, executed to plaintiffs, C. E. Shropshire and J. G. Fowler, an oil and gas lease upon the 140 acre tract of land above noted. The consideration which the lessor was to receive was 1/8th part of all of the oil and gas saved from the premises. The lease stipulated that it was to run three years from its date, but that if no well was commenced on the land on or before the 18th day of March, 1937, the lease would terminate, unless the lessees should pay a rental of $140 per year and continue such rentals throughout the three year term. At the time the lease was executed, and as a part and parcel of the same transaction, the parties thereto executed another contract, in which J. S. Rhodes, for himself and as community administrator of his deceased wife, were named as parties of the first part, and C. E. Shropshire and J. G. Fowler as parties of the second part, with these provisions:

"That whereas, parties of the first part have made and executed on this day an oil and gas lease in favor of parties of the second part, which said oil and gas lease covers the following described property, towit:

"E. 140 acres of one certain 240-3/4 acre tract held in fee simple by one J. S. Rhodes. Such 240-3/4 acre tract located in Wm. Orr Survey, Abstract No. A 849, and more fully described in deed from T. J. Bentley to J. S. Rhodes, recorded in Deed Records of Jack County, Texas, in Book 27, page 296.

"And whereas, it is the agreement and understanding of all parties hereto that said oil and gas lease be placed in escrow with the First State Bank, in Bryson, Texas. Said oil and gas lease to remain in said bank for a period of 20 days from the date of the execution thereof.

"Now, therefore, parties of the first part hereby deliver to said bank the oil and gas lease above referred to and instruct and direct said bank to deliver said oil and gas lease to parties of the second part, provided that within a period of 90 days from the execution hereof drilling operations upon said lease have been begun, and the well has actually been spudded in within said period of 90 days. If no well has been spudded in within said period, then said oil and gas lease is to be returned to parties of the first part. * * *

"It is further agreed by all parties hereto that the well so drilled on the land herein described shall be drilled to a depth of 3,300 feet, thirty-three hundred feet, unless oil and gas be found in said well at a lesser depth; (Meaning in paying quantities at a lesser depth)."

The lessees, Shropshire and Fowler, being financially unable to drill the well or to spud it in, they transferred and assigned 3/4ths interest in the lease to S. L. Fowler, father of J. G. Fowler, by a conveyance in writing. The consideration for that assignment was expressed therein and reads: "That said S. L. Fowler assumed our contract to spud well before midnight, June 14th, and carry us for 1/4th of the seven-eighths (7/8ths) working interest in entire lease, and one well with oil delivered in tanks. Any additional expense for development shall be borne pro-rata." With money furnished therefor by S. L. Fowler, C. E. Shropshire and J. G. Fowler moved a small spudder on the lease on June 14th, 1936, which was two days before the appointed time for the 90 days period within which the lessees were obligated to the lessor to begin drilling operations by spudding in a well, and with that spudder they started a well and dug a hole 6½ feet deep, but never dug the hole deeper and never thereafter did any further development work on the lease; nor were they financially able to do so.

Plaintiffs executed and delivered to the Hammond Oil Company the following instrument:

"Assignment of Oil and Gas Lease. Whereas, on the 16th day of March, 1936, a certain oil and gas mining lease was made and entered into by and between J. S. Rhodes, for self and as community administrator of the estate of self and his deceased wife, Julia E. Rhodes, Lessor, and C. E. Shropshire and J. G. Fowler, Lessees, covering the following described land in the county of Jack and State of Texas, towit:

"Being the East 140 acres of a certain 240-3/4 acres held in fee simple by the above lessor, and being out of the Wm. Orr Survey, Abstract 849, Jack County, Texas; more fully described in deed from T. J. Bentley to J. S. Rhodes, recorded in Deeds of Record, Jack County, Texas, in Book 27, page 296 of said Deeds of Record and containing 140 acres.

"Said lease being recorded in the office of the County Clerk in and for said county in book E-49, page 517 and 518; and

"Whereas, the said lease and all rights thereunder or incident thereto are now owned by C. E. Shropshire and J. G. Fowler.

"Now, therefore, for and in consideration of One Dollar (and other good and valuable considerations), the receipt of which is hereby acknowledged, the undersigned, the present owners of the said lease and all rights thereunder or incident thereto, do hereby bargain, sell, transfer, assign and convey unto Hammond Oil Company all of their right, title and interest of the original lessee and present owner in and to the said lease and rights thereunder insofar as it covers the entire 140 acres above described, together with all personal property used or obtained in connection therewith to Hammond Oil Company and its successors and assigns.

"And for the same consideration, the undersigned for themselves and their heirs, successors and representatives, do covenant with the said assignee, its successors, or assigns that they are the lawful owners of the said lease and rights and interests thereunder and of the personal property thereon or used in connection therewith; that the undersigned have good right and authority to sell and convey the same, and that said rights, interest and property are free and clear from all liens and incumbrances, and that all rentals and royalties due and payable thereunder have been duly paid; and that the undersigned will warrant and defend the same against the lawful claims and demands of all persons whomsoever.

"In witness whereof, the undersigned owners and assignors have signed and sealed this instrument this 18th day of September, 1936. (Signed) C. E. Shropshire, J. G. Fowler."

On the same date, the parties to that instrument entered into an agreement, expressed in the following letter:

"Hammond Oil Company
"Fort Worth National Bank Bldg.
"Fort Worth, Texas
                    "September 18, 1936
"Messrs. C. E. Shropshire
         "J. G. Fowler
         "S. L. Fowler
"Gentlemen:

"This will acknowledge receipt of assignment to the J. S. Rhodes 140 acre lease, being the East 140 acres of the Thomas Toby Survey, certificate 129, abstract 849, Jack County, Texas, under which lease we own an undivided one-half interest.

"You are each familiar with the present title difficulties concerning said lease and after further investigation, if, in our opinion we think it possible and advisable to

adjust said title difficulties, we shall proceed to do so to the end that we may drill a well, or have a well drilled, to fulfill the drilling obligations of said lease. (However, it is expressly understood that the adjusting of said titles and the drilling of said well shall be at our election and we shall be under no obligation and responsibility to do said adjusting and drilling.)

"Should we desire not to adjust said titles, and drill said well, we shall assign you your one-half interest in the lease above described, and we shall be agreeable, as the owner of the remaining one-half interest, to contributing in a fair and equitable way to any deal presented by a third party whereby there is a possibility of salvaging part of our mutual interests.

"Should we adjust said title difficulties and drill said well, we shall own an undivided three-fourths and you, jointly, an undivided one-fourth of the leasehold working interest, and if you so desire we shall assign each of you an undivided one-twelfth of the seven-eighths working interest in said lease and drill the well to satisfy the lease obligation. If the well be drilled and completed as a producing oil well each of you shall bear your proportionate part of the cost of completing said well, together with proportionate part of the cost of all well equipment, including casing. However, before the drilling of said well, we shall agree to an operating agreement covering these and other applicable conditions affecting such drilling.

"Please evidence your approval and acceptance on the place provided below.

"Yours very truly, Hammond. Oil Company, (Signed) C. R. Craig, Secretary-Treasurer.

"Accepted and Approved
"(Signed)   C. E. Shropshire
"J. G. Fowler
"S. L. Fowler."

It is to be noted here that the letter last quoted, and the acceptance thereof by the addressees, purport to recognize in the Hammond Oil Company an undivided ½ interest in the 140 acre lease. The statement of facts does not include any original conveyance of that ½ interest, but in appellants' brief it is contended that their recognition of such interest in the Hammond Oil Company was based upon their oral agreement to convey the same, in consideration of the undertaking of the Hammond Oil Company, expressed in their said letter of September 18th.

On November 23rd, 1936, J. S. Rhodes, individually and as community administrator of the estate of himself and his deceased wife, joined by her heirs, executed to W. B. Hamilton an oil and gas lease to the same land described in the former lease, to plaintiffs, with the stipulation that that lease would terminate if no well be commenced on the land on or before November 23rd, 1937. Hamilton paid a cash consideration for that lease of $3,500, and as a part and parcel thereof, the same parties executed another instrument, embodying the terms of the lease with the stipulation that Hamilton would begin drilling operations on some part of the 140 acre tract within 30 days after the delivery of the lease, and drill a well 3,300 feet, if necessary, to find oil in paying quantities. In that instrument, Hamilton was designated as party of the first part, and the lessors as parties of the second part, and this stipulation is embodied in that instrument:

"In this connection it is understood that on or about March 16th, 1936, J. S. Rhodes, individually and as community administrator of the estate of J. S. Rhodes and Julia E. Rhodes, deceased, entered into a contract and executed a lease to C. E. Shropshire and one Fowler, on and covering the same land herein described. Said lease was filed for record on June 12th, 1936, and recorded in Volume E 49, page 517, of the Jack County Miscellaneous Records, and that the contract made between the parties was filed for record on September 25th, 1936, and recorded in Volume #50, at page 633, of the Jack County Miscellaneous Records. Second parties represent to first party that the original consideration for the contract and lease, above described, was a promise on the part of Shropshire and Fowler to drill a well 'for oil and gas on the demised premises, such well to be spudded in and drilling operations to begin on or before ninety days after March 16th, 1936.' They represent that the consideration for the making of the lease was not complied with, in that a spudder of insufficient size to drill the well was moved on the land and a hole approximately eight inches in diameter was drilled in the ground, approximately six or seven feet deep, and that no rotary rig was moved on the land for the drilling of the well in accordance with the promise of Shropshire and Fowler that such rotary

rig would be used, and no further drilling of any kind or character has been had or done on such lease. They say in this connection that the consideration was not paid, and they claim that such oil and gas lease terminated by reason of the failure of Shropshire and Fowler to drill the land for oil and gas in accordance with the terms, conditions and stipulations contained in their verbal and written contract, and they claim at this time that neither Shropshire nor Fowler, nor the Hammond Oil Company, the company to which the lease agreement was assigned, has any right, title or interest in or to the premises covered by this contract, but that said lease was fully and finally forfeited by said parties because of the failure of the parties to carry out the contract. * * *

"In consideration of this agreement and the execution of the lease to first party by second parties W. B. Hamilton agrees to hold second parties free and harmless from any claim or liability which might be incurred by second party in the making of this contract or by the execution of the lease herein described. In this connection, W. B. Hamilton agrees to defend or to help to defend at his own cost and expense any law suit which might be brought against the second parties by Shropshire, or Fowler, or by Hammond Oil Company, the concern to which the original lease was assigned; or their assigns. * * *"

That was followed by a further agreement, that Hamilton would indemnify the lessors for any judgment that might be rendered against them in favor of Shropshire, Fowler, or the Hammond Oil Company, by reason of their former lease to Shropshire and Fowler.

The Hammond Oil Company did not drill the lease itself, nor did it reconvey to the plaintiffs the ½ interest stipulated in the letter of September 18th. And on December 14th, 1936, it executed to the lessors the following instrument:

"That Hammond Oil Company, of Ft. Worth, Texas, for and in consideration of Ten Dollars ($10.00) and other good and valuable considerations, the receipt of which is hereby acknowledged, does hereby release, relinquish and surrender to the present landowners and their heirs or assigns, all right, title and interest in and to a certain oil and gas mining lease made and entered into by and between J. S. Rhodes, for self and as community administrator of the Estate of self and his deceased wife, of Jack County, Texas, Julia E. Rhodes, as lessor, and C. E. Shropshire and J. G. Fowler as lessees, dated the 16th day of March, 1936, covering the following described land in the County of Jack, and State of Texas, towit:

"Being the East 140 acres of a certain 240-¾ acres held in fee simple by the above named lessor, and being out of the Wm. Orr Survey, Abstract 849, Jack County, Texas, more fully described in the deed from T. J. Bentley to J. S. Rhodes recorded in Deeds of Record, Jack County, Texas, in Book 27, page 296, of said Deeds of Record, and containing 140 acres. Said lease being recorded in the office of the County Clerk in and for said County, in Book E-49, at pages 517–518.

"In Witness whereof, the undersigned owner and releasor has signed this instrument this 14th day of December, 1936. Hammond Oil Company, J. G. Hammond, President."

On January 13th, 1937, W. B. Hamilton sold and conveyed to the Hammond Oil Company an undivided ½ interest in the east 100 acres of the 140 acre tract covered by the lease. The well then being drilled on the leased premises was completed the latter part of February, 1937. As a consideration for that transfer, the Hammond Oil Company paid Hamilton $1,750, which was ½ of the $3,500 which Hamilton paid the lessors for the lease to him, and as a further consideration, the Hammond Oil Company assumed ½ of the cost of drilling two wells on that 100 acre tract.

After the dismissal of the suit as against W. B. Hamilton, plaintiffs' suit against the Hammond Oil Company was narrowed to a demand for recovery of the undivided ½ interest in the lease on the east 100 acres of the 140 acres acquired by the Hammond Oil Company from W. B. Hamilton, upon the theory and allegations to the effect that after the date of the contract evidenced by the letter of September 18th, 1936, the Hammond Oil Company held that ½ interest in trust for the benefit of plaintiffs, which the company could not voluntarily repudiate and ignore, to plaintiffs' injury.

On the trial, plaintiff, Fowler, testified without contradiction that after the date of the contract of September 18th, 1936, J. G. Hammond told him on different occasions that he expected to get W. B. Hamilton to drill the well on the lease in accordance with the drilling obligations of the witness and Shropshire, expressed in the lease to

them on March 16th, 1936, and that he expected to take another lease in Hamilton's name, because Rhodes, the lessor, was "sore at him." He further testified that in reliance upon the statements so made to him by Hammond, plaintiffs ceased to try to get any one else to do their drilling, but there was neither pleadings nor proof that plaintiffs could have procured a drilling contract from any other person, but for their reliance upon those representations by J. G. Hammond. On cross examination, he testified that plaintiffs were not financially able to do such drilling on their own account; and that the spudder that had been used to spud in the hole to a depth of 6½ feet on June 14th had been moved off the lease prior to September 18th, 1936, the date of the contract above set out, and thereafter, plaintiffs made no efforts to drill a well themselves.

W. B. Hamilton was introduced as a witness by the plaintiffs, after he had been dismissed from the suit, and he testified without contradiction that about December 14th, 1936, when the Hammond Oil Company executed to lessors, the relinquishment of the lease theretofore executed by them to plaintiffs on March 16th, 1936, he orally agreed to sell to the Hammond Oil Company ½ interest in the lease on the east 100 acres of the tract, for a consideration of $1,750, which was ½ of the $3,500 he had theretofore paid the lessors for the lease on said 100 acres, and the further agreement of the Hammond Oil Company to pay ½ the cost of drilling two wells on that 100 acre tract, and that said oral agreement was later embodied in his written assignment to the Hammond Oil Company, of date January 23rd, 1937, noted above; and further as follows: "Q. I will ask you to tell the jury whether or not the fact that Hammond Oil Company had that lease outstanding, if it didn't or not influence you in agreeing to take them in on that deal? Answer: I would have to say yes."

Counsel for appellants have cited several decisions in support of their contention that the Hammond Oil Company holds one-half of the interest it acquired in the east 100 acres of the lease from W. B. Hamilton, as trustee for plaintiffs, under the equitable doctrine of constructive trust, and that the proof of such relation by parol evidence is not inhibited by the statute of frauds. Among the authorities cited are the following: James v. Fulcrod, 5 Tex. 512, 55 Am.Dec. 743; Burns v. Veritas Oil Co., Tex.Civ.App., 230 S.W. 440; Allen v. Allen, 101 Tex. 362, 107 S.W. 528; Addison v. Ball, Tex.Civ.App., 262 S.W. 877.

Appellees insist that the doctrine of constructive trust is not applicable here, because, first, at the time the Hammond Oil Company acquired that interest from W. B. Hamilton, the lease formerly held by the plaintiffs had expired, according to its own terms, by reason of their failure to comply with their drilling obligations therein specified; second, W. B. Hamilton, who was a stranger to that lease, had the lawful right to acquire the subsequent lease of November 23rd, as against the rights claimed by the plaintiffs, under the first lease; and, third, the Hammond Oil Company, as assignee of Hamilton, took the same rights as Hamilton had acquired under his lease. And in that connection, attention is called to the fact, as established by uncontroverted proof, that the Hammond Oil Company never took any steps to clear up any supposed defects to plaintiffs' title under their lease, and never undertook any drilling operations, and therefore was under no contractual obligation to assign to the plaintiffs the interest it acquired from W. B. Hamilton, under the subsequent lease.

Authorities relied on by the appellees include the following: Street v. Masterson, Tex.Civ.App., 277 S.W. 407; Green v. Hall, Tex.Com.App., 228 S.W. 183; Burns v. Veritas Oil Co., Tex.Civ.App., 230 S.W. 440; Thomas v. Warner-Quinlan Co., Tex. Civ.App., 65 S.W.2d 321; Montgomery v. Phillips Petroleum Co., Tex.Civ.App., 49 S.W.2d 967; Goocey v. Hopkins, 206 Ky. 176, 266 S.W. 1087; Thayer v. Leggett, 229 N.Y. 152, 128 N.E. 133; Hawkins v. Klein, 124 Okl. 161, 255 P. 570, 571; Robinson v. Eagle-Picher Lead Co., 132 Kan. 860, 297 P. 697, 75 A.L.R. 840; Westerman v. Dinsmore, 68 W.Va. 594, 71 S.E. 250, 251; 31 Tex.Jur. 940.

■ Since the Hammond Oil Company did not undertake to clear up the title defects in the plaintiffs' lease, and did not elect to drill a well on the lease or have one drilled on its own account; and there being no pleading by plaintiffs of a fraudulent collusion between defendant and Hamilton for the taking of the subsequent lease of date November 23rd, in the name of Hamilton, for the purpose of defrauding plaintiffs of their alleged rights therein, the obligation of the Hammond Oil Company to reconvey ½ interest in the lease, as stip-

ulated in the contract of September 18th, 1936, did not arise. However, the Hammond Oil Company was under an implied obligation to reconvey to the plaintiffs ½ interest in the lease, in the event of its decision not to clear the title and not to drill the well, if the plaintiffs' lease had not been terminated for failure of plaintiffs to perform their drilling obligation. It did not discharge that implied obligation, if the same arose, but on the contrary, it relinquished to the lessors the entire lease theretofore given to the plaintiffs. That deed of relinquishment was on December 14th, 1936, and it had the legal effect to relinquish plaintiffs' interest in the lease, if any they then had, since title thereto stood in the Hammond Oil Company at that time, provided it be said that the lessors accepted the same in good faith and were protected under the doctrine of innocent purchaser. In this connection it is to be noted that the lessors were not made parties to this suit, and no relief has been asked and no allegations of fraud are made as against them. The interest sought to be recovered in this suit is that acquired by the Hammond Oil Company from W. B. Hamilton, on January 23rd, 1937, after the Hammond Oil Company had relinquished the entire lease to the lessors on December 14th, 1936.

In Hand v. Errington, Tex.Com.App., 242 S.W. 722, this is quoted, from 3rd Pomeroy's Equity Jurisprudence, par. 1051, p. 2397: "'A constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form. * * * It is not essential for the application of this doctrine that an actual trust or fiduciary relation should exist between the original wrongdoer and the beneficial owner. Whenever one person has wrongfully taken the property of another, and converted it into a new form, or transferred it, the trust arises and follows the property or its proceeds.'" [page 723.]

That quotation is noted in 42 Tex.Jur. p. 652, followed by this statement: "For example, while an agent does not ordinarily stand in a fiduciary relation towards his principal, yet by the very act of misapplying the principal's property the agent becomes chargeable as a trustee in equity."

And in par. 48, page 653, of the same text, this is said: "One to whom property has been transferred for a specific purpose holds it in trust to be dealt with according to his promise, and if, in dereliction of his duty, he should convert the property to another use, he is accountable for the proceeds."

For a further discussion of implied or constructive trust, see, also, pages 649–654, of the same text.

It follows, therefore, that the constructive trust relied on by the plaintiffs was impressed only upon plaintiffs' one-half interest in the lease reserved by them in the contract of September 18th, if the lease had not then lapsed for plaintiffs' failure to comply with their drilling obligations. The Hammond Oil Company relinquished that interest to the lessors on December 14th, but it did not receive, in exchange therefor, the interest thereafter acquired in the 100 acre lease in controversy here, nor any other interest in the lease, upon which the trust would attach in favor of the plaintiffs. If that relinquishment by the Hammond Oil Company destroyed any of plaintiffs' interest in the lease, then in the absence of any fraud on the part of the lessors in accepting it, and with the lessors not parties to the suit, the plaintiffs' only recourse against the Hammond Oil Company in this suit for the wrong so committed would be for damages, if any they sustained, and not for title under the doctrine of resulting trust. And plaintiffs have made no complaint on this appeal of failure of the court to award them a personal judgment against the Hammond Oil Company for such damages.

Moreover, neither in plaintiffs' pleadings nor in testimony introduced is there any showing of an offer on the part of plaintiffs to pay to the Hammond Oil Company any part of the $1,750 consideration paid by it to W. B. Hamilton for ½ interest in the east 100 acres of the lease in controversy, nor offer to assume any part of the cost of drilling two wells thereon. In this proceeding for equitable relief, they could not claim the benefits so acquired by the Hammond Oil Company without assuming its burdens also.

Furthermore, the plaintiffs failed to discharge the burden incumbent upon them to show that on January 23rd, 1937, the date Hamilton transferred to the Hammond Oil Company ½ interest in the 100 acres in controversy, that their lease had not then lapsed, by reason of their failure to do drilling operations required of them in said lease; and they offered no testimony on that point.

The facts recited above having been established by uncontroverted proof, the

court did not commit reversible error in directing a verdict in the defendants' favor.

For the reasons indicated, all assignments of error are overruled and the judgment of the trial court is affirmed.

## On Rehearing.

The uncontroverted proof showed that the Hammond Oil Company did not exercise its option to adjust title difficulties in the former lease held by plaintiffs, growing out of their failure to discharge the drilling operations imposed on them by said lease, and thereafter to drill a well after adjusting such title difficulties, and that the operations of the Hammond Oil Company on the lease in controversy were done under the assignment to it by W. B. Hamilton, under the lease he acquired from the land owners. And there were no pleadings by the plaintiffs that the Hammond Oil Company took over the lease from Hamilton, for the purpose of avoiding any claim of plaintiffs, based upon the lease to them, of date March 16th.

▇ And as noted in our original opinion, those land owners were necessary parties to determine that issue because of their warranty of title to W. B. Hamilton, and under which the Hammond Oil Company claimed, as assignee.

▇ In order to show that the lease the Hammond Oil Company acquired from W. B. Hamilton was impressed with a trust in plaintiffs' favor, under any theory of equitable trust, as alleged by plaintiffs, it was incumbent upon the plaintiffs to allege and prove that the Hammond Oil Company acquired that lease in pursuance of its obligations, expressed in the assignment taken by them from plaintiffs, and shown in our original opinion, to wit, that it would undertake to clear plaintiffs' lease of title difficulties and thereafter proceed to drill a well under and by virtue of that lease; notwithstanding the specific stipulations in that contract that it would be optional with the Hammond Oil Company not to perform those obligations.

▇ In the absence of a pleading with the land owners, parties to the suit, of waiver by them of plaintiffs' failure to do drilling operations in order to avoid a forfeiture of their lease of March 16th, they were in no position to say that the lease was still valid at the time the Hammond Oil Company surrendered it and took from W. B. Hamilton an assignment of an interest in his lease from the land owners.

If, under any theory presented by plaintiffs' pleadings, they had any interest in the lease acquired by the Hammond Oil Company from W. B. Hamilton, then they failed to show by any proper pleadings, supported by evidence, the amount of such interest. The testimony of Hamilton that plaintiffs' lease of March 16th had some influence with him in agreeing to make the assignment to the Hammond Oil Company, would be wholly insufficient for such purpose.

In plaintiffs' pleadings, it is alleged that they offered to pay the Hammond Oil Company a pro rata part of the $1,750 paid by it to W. B. Hamilton, and also to pay one-half the cost of drilling operations by that company after it had acquired the lease from Hamilton, and they offered testimony tending to support that allegation.

The statement in the original opinion, that there was an absence of pleading and testimony to that effect, was an oversight, and is therefore withdrawn. However, we believe the same is immaterial, in view of our foregoing conclusions.

It is insisted that the statement in our original opinion, that the Hammond Oil Company did not drill the lease itself, be modified to this extent. The evidence showed that the Hammond Oil Company entered into a contract with W. B. Hamilton, under which the Archer Drilling Company was to drill one well and the Hammond Oil Company was designated to drill the second well, and the Hammond Oil Company paid one-half the cost of drilling the two wells. But that fact likewise has no material bearing upon the conclusions we have reached.

Appellants' motion for rehearing is overruled.