John P. WAGNER, Appellant,

v.

SHEETS & WALTON DRILLING COM-
PANY et al., Appellees.

No. 3739.

Court of Civil Appeals of Texas.

Eastland.

July 13, 1962.

Rehearing Denied Sept. 7, 1962.

Perkins, Bezoni, Kirwan & McWhorter, Midland, for appellant.

Harrell & Thompson, Breckenridge, Culton, Morgan, Britain & White, Amarillo, for appellees.

This is an appeal from a judgment which denied relief sought by plaintiff, John P.

Wagner, to equitably impress an overriding royalty reservation in an assignment of a December 7, 1953, oil and gas lease on an oil and gas lease covering the same land which was procured on January 6, 1959.

The December 7, 1953, lease was from D. R. Wright and wife as lessors to Mrs. O. H. DeGrazier as lessee covering all of the south one-half and the northwest one-fourth of Section 4, Block 3, S. P. Ry. Co. land in Stephens County, and was for a primary term of five years, expiring December 7, 1958. The lease contained the following provision:

> "Notwithstanding anything to the contrary expressed herein, it is agreed and understood that upon the expiration of the primary term hereof, each producing well located on said land will perpetuate this lease as to 40 acres of land, and no more, lessor shall execute and deliver a release hereof as to all acreage not so held by production."

This lease ultimately became vested in Sheets & Walton Drilling Company, defendants herein, subject to a ⅜₂nds overriding royalty interest, owned and held by grantees or assignees holding under Mrs. DeGrazier. When Mrs. DeGrazier assigned the lease in February of 1956, she reserved a ⅜₂nds of ⅞ths overriding royalty. No provision of the assignments executed by her indicated that assignees were obligated to maintain the lease in force beyond its original term.

This suit was originally brought by Mrs. Walter B. Smith against Sheets & Walton Drilling Company. Mrs. Smith was an assignee of ⅜₂nds of the overriding royalty interest reserved by Mrs. DeGrazier, but pending litigation John P. Wagner acquired Mrs. Smith's overriding royalty interest and was substituted as plaintiff. The remaining portion of the overriding royalty interest reserved by Mrs. DeGrazier is not here in controversy.

Prior to the end of the primary term of the 1953 lease on December 7, 1958, Sheets & Walton had drilled a well on the northwest one-fourth of the southwest one-fourth of Section 4 which was included in the lease. Although the well first produced oil, it was not in merchantable quantities and the well was plugged back and completed as a gas well capable of producing gas, and was shut-in as a gas well.

On January 5, 1959, Sheets & Walton, the owners or assignees of the 1953 lease, executed a release on all the land covered by such lease "except insofar as said lease covers a 40 acre tract around a shut-in gas well located on said property, the 40 acre tract being decribed as the northwest one-fourth of the southwest one-fourth of said Section 4." On January 6, 1959, Wright and wife executed to Sheets & Walton a new lease covering all the south one-half and the northeast one-fourth of Section 4, which is the same land described in the 1953 lease. They later executed a substitute lease bearing the same date, but which was not executed until December 14, 1959.

Prior to the expiration of the primary term of the 1953 lease W. W. Walton, who was one of the partners of Sheets & Walton Drilling Company, began negotiations with Mr. and Mrs. Wright to acquire a lease covering the same acreage as was contained in the 1953 lease in such form as to allocate the number of acres to the gas well as promulgated by the Railroad Commission of Texas in order to permit full allowable to be produced from the gas well. On September 23, 1959, Sheets & Walton Drilling Company, by letter agreement, sold to Texoma Production Company, among other leases, the oil and gas lease dated December 7, 1953, from D. R. Wright and wife to Mrs. O. H. DeGrazier and the oil and gas lease dated January 6, 1959, from D. R. Wright and wife to Sheets & Walton Drilling Company.

It is undisputed that Sheets & Walton Drilling Company at all times down to and including the date of the execution of their assignment to Texoma Production Company recognized the overriding royalty in-

terest in question as being outstanding. The evidence also shows that Texoma Production Company at all times material hereto knew that the overriding royalty was outstanding and that Sheets & Walton Drilling Company recognized same. The question presented is whether the 1953 lease and the overriding royalty interest of appellant has terminated as to all of the land described therein except the northwest one-fourth of the southwest one-fourth of Section 4 upon which the gas well is located, or whether appellant's overriding royalty interest should be and is by equity impressed upon all the acreage described in the 1953 and the 1959 leases.

In our opinion the trial court did not err in failing to impress appellant's overriding royalty interest on those portions of the lands covered by the 1959 lease except the 40 acres upon which the gas well was located. Substantially the same question was before this court in Thomas v. Warner-Quinlan Company, Tex.Civ.App., 65 S.W.2d 321, (Writ Ref.). In that case Judge Funderburk speaking for the Court stated as follows:

> "Defendant in error, having committed no wrong as against plaintiffs in error, no constructive trust could arise out of the act of taking the new lease. The parties occupied no fiduciary relation, at least none looking beyond the natural terms of the leases assigned under the contract. We therefore conclude that the plaintiffs owned no interest in the production from the 140⅛-acre tract under the new lease."

In 3 Summers Oil & Gas, Section 554, it is stated as follows:

> "While the right to overriding royalty, or a sum of money paid out of production of oil or gas, created in the assignment, does not survive the termination of the assigned lease, yet in a number of cases the assignor has claimed that the assignee, by permitting the lease to expire, or by surrender thereof, and the taking of a second lease from the lessor, has violated a relation of trust and confidence, and that the assignor should be entitled to such overriding royalty or money out of production under the renewal lease. The mere assignment of an oil and gas lease creates no such fiduciary relation. If it is created, it must be by the terms of the assignment. In a number of cases the courts have held that the provisions of the assignment did not create a fiduciary relation between the parties so that the assignor would be entitled to the payment of overriding royalties or other sums out of oil or gas produced under a second lease taken by the assignee."

Numerous other cases and authorities are to the same effect and we have found none to the contrary.

■ By the terms of the 1953 oil and gas lease it would have expired in the absence of production at the end of the primary term. It was further provided that even in case of production at the expiration of the primary term each producing well would perpetuate the lease as to 40 acres and no more. The continuation of the overriding royalty depended upon the continuation of the lease. There was no provision in the assignments executed by Mrs. DeGrazier in 1956 under which appellees hold, and in which Mrs. DeGrazier retained the overriding royalty interest held by appellant, which required her assignee to maintain the 1953 lease in force beyond its primary term. In none of the assignments under which Sheets & Walton Drilling Company hold was there any provision that the overriding royalties theretofore retained should be continued in any new leases, if any, that might be obtained on said lands. When Sheets & Walton permitted the 1953 lease to expire and released same except insofar as said lease covered the 40 acre tract around the shut-in gas well in question and then secured a new lease on all the land covered by the 1953 lease they

were doing no more than that which they had the right to do under the 1953 lease and the assignments under which they held. The 1953 lease had by its own terms and by the executed release expired, except as to the 40 acre tract around the gas well. As to that 40 acres "and no more" the lease was by its terms perpetuated. The execution of the 1959 lease covering the same land was not an extension of the previous lease, although it did, in effect, recognize its perpetuation insofar as the 40 acre tract was concerned. True, it would have been greatly to the advantage of the holders of the overriding royalty interest for the 1953 lease to be perpetuated in toto or that such overriding royalty be continued in effect as to all lands covered by such lease in any new lease agreement. The holders of the 1953 lease, however, had no such obligation. There was no fiduciary relationship between the parties which required the holders of that lease to maintain it or the overriding royalty interest of appellant in force as to all the land involved therein. See Montgomery v. Phillips Petroleum Company, Tex.Civ.App., 49 S.W.2d 967, (Writ Ref.); Shropshire et al. v. Hammond, Tex.Civ.App., 120 S.W.2d 282.

■ We cannot agree with appellant's contention that the fact that Sheets & Walton Drilling Company recognized that the overriding royalty interest was outstanding created a confidential relationship by reason of which equity would impress the new lease with their overriding royalty. Actually both Sheets & Walton Drilling Company and their assignee, Texoma Production Company, still recognize the overriding royalty insofar as it concerns the 40 acre tract perpetuated by the shut-in gas well under the provisions of the 1953 lease. The fact that Mr. Walton of Sheets & Walton Drilling Company may have been of the opinion that the legal effect of the transactions shown by the evidence was that appellant's overriding royalty applied to all the land covered by the new lease is not controlling. The controlling considerations are the provisions of the leases and assignments here involved. This is not a case in which the parties have acted upon their interpretation of an ambiguous instrument. The provisions of the original lease and assignments under it are not ambiguous and plainly show that the 1953 lease has expired except as to the 40 acre tract. There is no provision for the overriding royalty in the new lease. We hold that there was no confidential relationship between the parties which would impress such lease with the overriding royalty with which the 1953 lease was burdened. Appellant's points are overruled.

The judgment of the trial court is affirmed.